**IN THE CIRCUIT COURT OF JEFFERSON COUNTY**
**STATE OF MISSOURI**

| | | |
|---|---|---|
| **KAREN SCHULTE,** | ) | |
| *individually and on behalf of* | ) | **Case No. _____** |
| *all others similarly situated,* | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| **v.** | ) | |
| | ) | |
| **CONOPCO, INC.,** *d/b/a* **"UNILEVER,"** | ) | |
| **WALGREEN CO., CVS PHARMACY, INC.** | ) | |
| **WALMART, INC., TARGET** | ) | |
| **CORPORATION, SCHNUCK** | ) | |
| **MARKETS, INC.,** *and* **DIERBERGS** | ) | |
| **MARKETS, INC.** | ) | |
| | ) | |
| | ) | |
| **DOES 1 through 10,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**CLASS ACTION PETITION**

Plaintiff Karen Schulte, individually and on behalf of all others similarly situated, hereby files

this, her Class Action Petition, against Defendants Conopco, Inc., *d/b/a* "Unilever", Walgreen Co., CVS

Pharmacy, Inc., Walmart, Inc., Target Corporation, Schnuck Markets, Inc., Dierbergs Markets, Inc., and

DOES 1 through 10 (collectively "Defendants") for their gender-discriminatory pricing scheme which

constitutes an illegal, "unfair practice" in violation of the Missouri Merchandising Practices Act, Mo.

Rev. Stat. chap. 407 ("MMPA").

## I.    INTRODUCTION

1.    This lawsuit addresses a particularly pernicious example of the so-called "Pink Tax," the

price difference for female-specific products or services compared with those offered to men.  Study

after study has found that, women, on a systematic and wide-spread basis, are charged more than men

Electronically Filed - Jefferson - July 04, 2019 - 02:27 PM

for what are essentially the exact same products or services.[1]  This gender-based price discrimination is indisputably harmful to women, adding another layer to the wage inequality that women face, ultimately making it harder for women to make ends meet.[2]  In fact, over twenty years ago, in 1994, the State of California estimated that the average woman is charged an extra $1,351.00 per year, simply for being a woman; those numbers have only increased over the last two decades.

2.        Gender discrimination in pricing has become such a scourge affecting female consumers that governments in multiple areas of the country have specifically outlawed the practice, including those in New York, Miami-Dade County, Florida, and California.  In addition, in April of 2019, two members of the United States Congress introduced H.R. 2048, the *Pink Tax Repeal Act,* a bipartisan bill aimed at eliminating gender-based discrimination in pricing.  The bill's sponsor pointed out that "[t]he pink tax is not a one-time injustice.  It's an insidious form of institutionalized discrimination that affects women across the country from the cradle to the grave."[3]

3.        To be sure, not every instance of gender discrimination in pricing is unjustified; in certain circumstances, there may exist very real, material differences in products or services that legitimately account for such pricing variances.  However, for every "justified" instance of gender-discrimination in pricing, there are scores more instances where the practice is unjustified and completely unfair.  This lawsuit concerns a particularly pernicious and predatory example of unfair gender discrimination in pricing: the pricing of a *nearly identical* female-marketed product at a substantially higher price than its male-marketed counterpart.  This practice is unjustified and, by all measures, unfair.

---

[1]  *See, e.g.,* "From Cradle to Cane: The Cost of Being a Female Consumer, A Study of Gender Pricing in New York City," New York City Department of Consumer Affairs, 2015.

[2]  As just one of multiple examples, the United States Bureau of Labor Statistics recently reported that women's median earnings were 83 percent of those of male full-time wage and salary workers. *See* "Highlights of women's earnings in 2014." BLS Reports, Report #1058, November 2015.

[3]  *See* "Reps Speier & Reed Reintroduce Pink Tax Repeal Act to End Gender-Based Pricing Discrimination," April 3, 2019 Press Release, available at: https://speier.house.gov/media-center/press-releases/reps-speier-reed-reintroduce-pink-tax-repeal-act-end-gender-based.

Electronically Filed - Jefferson - July 04, 2019 - 02:27 PM

4.      In many cases, including in this one, gender-discriminatory pricing is not only unfair, but it also is deceptive, and the deceptive nature of the practice compounds and increases its unfairness.  The average consumer, for instance, is largely unaware that nearly-identical products marketed to the opposite sex are substantially cheaper, especially when products are differentiated in size and packaging style and often located in different parts of a store.  Despite the fact that, technically, men and women are able to purchase a product marketed to the opposite sex, that alternative is even more unfair due to social conditioning and societal expectations regarding what is "feminine" versus "masculine."  Just as it would be unfair for men to have to purchase and use pink-colored razors to get a better price, it is unfair for women to have to, for instance, "smell like a man" to get a better price on their deodorant or aftershave.  In short, grossly overcharging women for nearly-identical products is an unavoidably unfair practice.

5.       Fortunately for women living in Missouri, they are protected by the Missouri Merchandising Practices Act, Mo. Rev. Stat. chap. 407 ("MMPA"), which specifically outlaws such "unfair practices."  By bringing this lawsuit, Plaintiff Schulte aims not only to protect and to compensate all Missouri women victimized by Defendants in this manner, but also to punish and make an example of Defendants for their long-standing, insidious and predatory gender discrimination through the institution of punitive damages.

## II.      PARTIES, JURISDICTION, AND VENUE

6.      Plaintiff Karen Schulte is a citizen and resident of Jefferson County, Missouri.

7.      Plaintiff brings this Class Action Petition individually and on behalf of a putative class of all Missouri residents.

8.      Defendant Conopco, Inc. *d/b/a* "Unilever" (hereinafter "Unilever") is a New York corporation having its principal place of business at 700 Sylvan Ave., Englewood Cliffs, NJ 07632.  Unilever may be served at: CT Corporation System, 120 South Central Ave., Clayton MO 63105.

3

Electronically Filed - Jefferson - July 04, 2019 - 02:27 PM

9.      Defendant Walgreen Co. (hereinafter "Walgreens") is an Illinois corporation having its principal place of business at 300 Wilmot Rd., Deerfield, IL 60015. Walgreens may be served at: The Prentice-Hall Corporation System, Inc., 221 Bolivar Street, Jefferson City, MO 65101.

10.     Defendant CVS Pharmacy, Inc. (hereinafter "CVS") is a Rhode Island corporation having its principal place of business at One CVS Drive, Woonsocket, RI 02895.  CVS may be served at: CT Corporation System, 120 South Central Ave., Clayton MO 63105

11.     Defendant Walmart, Inc. (hereinafter "Walmart") is a Delaware corporation having its principal place of business at 708 SW 8th Street, Bentonville, AR 72716.  Walmart may be served at: CT Corporation System, 120 South Central Ave., Clayton MO 63105.

12.     Defendant Target Corporation (hereinafter "Target") is a Minnesota corporation having its principal place of business at 1000 Nicollet Mall, TPS 3155, Minneapolis, MN 55403.  Target may be served at: CT Corporation System, 120 South Central Ave., Clayton MO 63105.

13.     Defendant Schnuck Markets, Inc. (hereinafter "Schnucks") is a Missouri corporation having its principal place of business at 11420 Lackland Rd., St. Louis, MO 63146.  Schnucks may be served at: Mary H. Moorkamp, 11420 Lackland Rd., Box 46928, St. Louis MO 63146.

14.     Defendant Dierbergs Markets, Inc. (hereinafter "Dierbergs") is a Missouri corporation having its principal place of business at 16690 Swingley Ridge Road, Chesterfield, MO 63017. Dierbergs may be served at: Robert J. Dierberg, 16690 Swingley Ridge Road, Chesterfield, MO 63017.

15.     Whereas Defendant Unilever is the manufacturer and distributor of the product at issue, and therefore controls pricing of the product and is thus responsible for the conduct complained herein, upon information and belief, Unilever did not directly sell the product to any Plaintiff, rather selling the product directly to Unilever's co-Defendants.  From time to time, where appropriate, Defendant Walgreens, CVS, Walmart, Target, Schnucks, and Dierbergs will be referred to collectively as the "Retail Defendants."

4

Electronically Filed - Jefferson - July 04, 2019 - 02:27 PM

16.     The above-named Retail Defendants, along with Unilever, and their subsidiaries and agents, are collectively referred to herein as "Defendants."   The true names and capacities of the Defendants sued herein as DOES 1 through 10, inclusive, are currently unknown to Plaintiff, who therefore sues such Defendants by fictitious names.  Each of the Defendants designated herein as a DOE is legally responsible for the unlawful acts alleged herein.  If necessary, Plaintiff will seek leave of Court to amend the Petition to reflect the true names and capacities of the DOE Defendants when such identities become known.

17.     Venue is proper in the Circuit Court of Jefferson County, Missouri, because the Plaintiff resides here, and a substantial part of the events or omissions giving rise to the claims in this action occurred in this venue.

18.     This forum also is superior in convenience to any other, as all of the Plaintiffs are or were Missouri citizens and are or were located in Missouri, and the acts complained of violated Missouri law.

19.     This asserted class action comports with Missouri Supreme Court Rule 52.08 and with R.S.Mo. § 407.025(3) of the MMPA.  Plaintiffs' identities can be ascertained from Defendant's records, but are so numerous that simple joinder of all individuals is impracticable.  This action raises questions of law and fact common among Plaintiffs.  The claims of lead Plaintiff is typical of all Plaintiffs' claims. Named Plaintiff will fairly and adequately protect all Plaintiffs' interests, and is represented by attorneys qualified to pursue this action. More specifically:

20.     <u>Class definition</u>:  Plaintiff Karen Schulte brings this action on behalf of herself and a class of similarly-situated persons preliminarily-[4] defined as follows: All Missouri consumers, who, within the Class Period, purchased "Dove"-brand "Advanced Care" Antiperspirant (the "Product")[5] from any of the Retail Defendants in the State of Missouri.  The Class Period begins five years prior to

---

[4] Plaintiff reserves the right to propose, as needed, any different or other more- or less-specific class, classes, subclass, or subclasses as Plaintiff deems appropriate for purposes of class certification.
[5] As that term and label is defined in greater detail *infra*.

Electronically Filed - Jefferson - July 04, 2019 - 02:27 PM

the date of the filing of this Petition, and ceases upon the date of the filing of this Petition.  Excluded from the Class are: (a) any judges presiding over this action and members of their staffs and families; (b) the Defendants and their subsidiaries, parents, successors, and predecessors; any entity in which the Defendants or their parents have a controlling interest; and the Defendants' current or former officers and directors; (c) employees (i) who have or had a managerial responsibility on behalf of the organization, (ii) whose act or omission in connection with this matter may be imputed to the organization for liability purposes, or (iii) whose statements may constitute an admission on the part of the Defendants; (d) persons who properly execute and file a timely request for exclusion from the class; (e) the attorneys working on the Plaintiffs' claims; (f) the legal representatives, successors, or assigns of any such excluded persons; and (g) any individual who assisted or supported the wrongful acts delineated herein.

21.    <u>Numerosity</u>:  Upon information and belief, the Class includes tens of thousands, if not hundreds of thousands, of individuals on a statewide basis, making their individual joinder impracticable.  Although the exact number of Class members and their addresses are presently unknown to Plaintiff, they are readily ascertainable from Defendants' records.

22.    <u>Typicality</u>: Plaintiff's claims are typical of those of the Class because all Plaintiffs were injured by the Defendants' uniform wrongful conduct, specifically, employing an "unfair practice" under the MMPA, using gender-discriminatory pricing in offering and selling the Product to Plaintiffs.

23.    <u>Adequacy</u>:  Plaintiff Karen Schulte is an adequate representative of the Class because her interests do not conflict with the interests of the Class members she seeks to represent, she has retained competent and experienced counsel, and she intends to prosecute this action vigorously.  The interests of the Class will be protected fairly and adequately by Plaintiff and her counsel.

24.    <u>Commonality</u>:  Common questions of law and fact exist as to all Class members and predominate over any questions affecting only individual members, such as: (a) whether the Defendants'

Electronically Filed - Jefferson - July 04, 2019 - 02:27 PM

gender discriminatory pricing is an "unfair practice" pursuant to the MMPA; (b) whether and to what extent the Class members were injured by Defendants' illegal conduct; (c) whether the Class members are entitled to compensatory damages; (d) whether the Class members are entitled to punitive damages; (e) whether the Class members are entitled to declaratory relief; and (f) whether the Class members are entitled to injunctive relief.

25.    <u>Superiority</u>:  This class action is appropriate for certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy.  The damages suffered by the individual Class members will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by the Defendant's wrongful conduct.  Thus, it would be extremely difficult for the individual Class members to obtain effective relief.  A class action presents far fewer management difficulties and provides the benefits of a single adjudication, including economies of time, effort, and expense, and uniformity of decisions.

## III.    <u>BACKGROUND</u>

26.    Defendants manufacture, distribute, and/or sell the product at issue herein, Dove-brand "Advanced Care" antiperspirant.

27.    The Retail Defendants sell the Product directly to consumers.

28.    Defendant Unilever owns the "Dove" brand and, under that brand name, manufactures and distributes, *inter alia,* the Dove-branded "Advanced Care" antiperspirant.

29.    The "Advanced Care" line of products is marketed towards females, having a more-"feminine" packaging, generally being grouped by co-Defendants in the "women's" section of their stores, and being available in multiple "feminine" scents.

30.    Unilever, through its Dove-branded website, www.dove.com, markets "Advanced Care" to women, displaying multiple pictures of women on the marketing web-page for the product, and describing the "mission" underlying the "Advanced Care" product as being "to help the next generation

Electronically Filed - Jefferson - July 04, 2019 - 02:27 PM

of women develop a positive relationship with the way they look."[6]

31.    The packaging, in contrast to Dove's male-directed products, is relatively more "feminine," appearing as follows:



a.

32.    The "Advanced Care" line of products comes in multiple different varieties and/or "scents."

33.    The "Advanced Care" line of products is also marketed and divided into various sub-groups including, *inter alia,* a "Clear Tone"-labeled sub-group and an "Invisible"-labeled sub-group.

34.    For purposes of this lawsuit, because the formulation is slightly different than the base "Advanced Care" line, the aforementioned sub-groups are excluded from the definition of "Product" as used herein.

35.    The term "Product" as used herein, is instead limited to the types of "Advanced Care" antiperspirant sharing the same, or nearly the same, ingredients, as follows:

     a.    Active Ingredient: Aluminum Zirconium Tetrachlorohydrex GLY (15.2%)

     b.    Inactive Ingredients:

---

[6]    *See,    e.g.,*    https://www.dove.com/us/en/deodorants/stick/go-fresh-advanced-care-rejuvenate-antiperspirant.html

Electronically Filed - Jefferson - July 04, 2019 - 02:27 PM

      i.   Cyclopentasiloxane, Stearyl Alcohol, C12-15 Alkyl Benzoate, PPG-14 Butyl Ether, Hydrogenated Castor Oil, PEG-8, Dimethicone, Fragrance (Parfum), Silica, Polyethylene, Helianthus Annuus (Sunflower) Seed Oil, Steareth-100, BHT, Hydroxyethyl Urea.

36.      According to Unilever's Dove-branded website, www.dove.com, and confirmed by corresponding product packaging, the following "scents" and/or varieties of "Advanced Care" anti-perspirant all share the same, or nearly the same, ingredients listed above:

      a.   "Go Fresh Rejuvenate"

      b.   "Revive"[7]

      c.   "Restore"

      d.   "Cool Essentials"

      e.   "Rose Petals"

      f.   "Soothing Chamomile"

      g.   "Shea Butter"[8]

      h.   "Sensitive"

      i.   "Rebalance"

      j.   "Powder Soft"

      k.   "Original Clean"

      l.   "Nourished Beauty"

      m.   "Lavender Fresh"

---

[7] Also includes "Lippia Citriodora Flower/Leaf/Stem Water.":
https://www.dove.com/us/en/deodorants/stick/advanced-care-revive-antiperspirant.html

[8] Also includes "Butyrospermum Parkii (Shea) Butter."
https://www.dove.com/us/en/deodorants/stick/advanced-care-shea-butter-antiperspirant.html

Electronically Filed - Jefferson - July 04, 2019 - 02:27 PM

     n.  "Coconut"

     o.  "Beauty Finish"

37.     Because each of the above-listed varieties of "Advanced Care" share the same, or nearly the same, Inactive Ingredients (with two minor exceptions for an additional ingredient in two "scents" as noted above), and share the same amount and type of Active Ingredients, all varieties are substantially similar enough to be treated collectively in this lawsuit, and therefore constitute, collectively, the "Product" as hereinafter and otherwise mentioned in this lawsuit.

38.     The Product, like similar "Pink Taxed" items sold throughout the United States, has a corresponding, male-marketed product that is materially-identical to it.

39.     Unilever also manufactures and distributes, and the Retail Defendants sell directly to consumers, a male-oriented line of antiperspirants under the same brand, "Dove," called "Men + Care."

40.     In contrast to the "Advanced Care" line of products, the "Men + Care" line is packaged in a relatively more "masculine" packaging, is generally grouped with men's products in store locations, and is marketed by Defendant Unilever, on its Dove-branded website, www.dove.com, to men, as each antiperspirant stick features, *inter alia,* a "[C]lassic, masculine scent."[9]

41.     The basic "Men + Care"[10] line of antiperspirants, like the "Advanced Care" line, comes in multiple different "scents."

42.     The packaging, in contrast to "Advanced Care," is relatively more "masculine," appearing as follows:

---

[9] https://www.dove.com/us/en/men-care/deodorant/stick-antiperspirant/men-care-cool-silver-antiperspirant-stick.html

[10] For simplicity, discussion of the "Men + Care" antiperspirant is directed at the "basic" line, and excludes the "Elements," "Sportcare" and "Stain Defense" sub-groups thereof.

Electronically Filed - Jefferson - July 04, 2019 - 02:27 PM



a.

43.    According to the labels on the "Men + Care" line of products, multiple varieties of the "Men + Care" line contain at least the following ingredients:

a.   Active Ingredient: Aluminum Zirconium Tetrachlorohydrex GLY (15.2%)

b.   Inactive Ingredients:

i.   Cyclopentasiloxane, Stearyl Alcohol, C12-15 Alkyl Benzoate, PPG-14 Butyl Ether, Hydrogenated Castor Oil, PEG-8, Dimethicone, Fragrance (Parfum), Polyethylene, Helianthus Annuus (Sunflower) Seed Oil, Steareth-100, BHT.

44.    As a comparison of ingredients reveals, at least multiple varieties of the "Men + Care" antiperspirant sticks contain *every single* ingredient included in the Product with only one consistent omission: Hydroxyethyl Urea; and, in most cases, the basic "Men + Care" antiperspirant sticks contain multiple additional ingredients.

45.    In other words, the *only* ingredient contained in the Product that is not also contained in at least multiple varieties of "Men + Care," is Hydroxyethyl Urea; and because Hydroxyethyl Urea is the last-listed ingredient in all varieties of the Product, it follows that it is the least predominant ingredient in the Product.

46.    The presence of minimal amounts of Hydroxyethyl Urea in the Product does not justify

11

Electronically Filed - Jefferson - July 04, 2019 - 02:27 PM

the greatly inflated price at which it is sold in comparison to "Men + Care;" that fact does not, in any manner, cure the Defendants' gender-discriminatory pricing of the Product from being an "unfair practice."

47.     Moreover, whereas both the "Men + Care" line and the Product contain the exact same active ingredient, Aluminum Zirconium Tetrachlorohydrex GLY (15.2%), "Men + Care" provides a purchaser 2.7 ounces of the mixture of ingredients whereas a purchaser of the Product only receives 2.6 ounces.

48.     Nonetheless, across the entirety of the Missouri marketplace, every single major retailer including every Retail Defendant herein, charges its customers significantly more for the Product than they charge customers for the basic "Men + Care" line of antiperspirants.

49.     In short, every Retail Defendant herein charges their customers substantially more for the "women's version" of essentially the exact same product.

50.     There are few better examples of the gender discriminatory and *unfair* "Pink Tax" than in the Retail Defendants' sale of the Product to Missouri consumers.

51.     The Product is materially identical to "Men + Care," and the Product contains less of the key Active Ingredient; yet the Product, consistently, costs significantly more than "Men + Care."

52.     Thus, due to Defendants' unfair practice, women consumers are being charged significantly more than men for essentially the exact same product.

53.     For the multiple reasons set forth above and below, Defendants' pricing and selling of the Product constitutes an "unfair practice" that is illegal and prohibited under the MMPA.[11]

*Facts Particular to Karen Schulte and Representative of the Proposed Class*

54.     In or around June of 2019, Plaintiff visited a retail outlet for Defendant Walgreens,

---

[11] On information and belief, Unilever prices and sells the Product in a gender-discriminatory fashion to the Retail Defendants, and is therefore responsible for, and an active participant in, the "unfair practice" violating the MMPA.

Electronically Filed - Jefferson - July 04, 2019 - 02:27 PM

located at 1718 Catlin Dr., Barnhart, MO 63012.

55.     While there, Plaintiff observed that Defendant Walgreens was selling the Product for $6.79.

56.     On information and belief, on the same day, at the same location, Defendant Walgreens was selling the materially-identical "Men + Care" antiperspirant for $6.29.

57.     On that same day, Plaintiff purchased the Product from Defendant Walgreens, paying $6.79.

58.     In or around June of 2019, Plaintiff also visited a retail outlet for Defendant Walmart, located at 2201 Michigan Ave., Arnold, MO 63010.

59.     While there, Plaintiff observed that Defendant Walmart was selling the Product for $4.88.

60.     On information and belief, on the same day, at the same location, Defendant Walmart was selling the materially-identical "Men + Care" antiperspirant for $4.43.

61.     On that same day, Plaintiff purchased the Product from Defendant Walmart, paying $4.88.

62.     In or around June of 2019, Plaintiff visited a retail outlet for Defendant Target, located in Arnold, MO and having a contact phone number of 636-287-1055.

63.     While there, Plaintiff observed that Defendant Target was selling the Product for $4.89.

64.     On information and belief, on the same day, at the same location, Defendant Target was selling the materially-identical "Men + Care" antiperspirant for $4.49.

65.     On that same day, Plaintiff purchased the Product from Defendant Target, paying $4.89.

66.     In or around June of 2019, Plaintiff visited a retail outlet for Defendant CVS, located at 2120 Lone Star Dr., Arnold MO 63010.

67.     While there, Plaintiff observed that Defendant CVS was selling the Product for $6.99.

68.     On information and belief, on the same day, at the same location, Defendant CVS was

13

Electronically Filed - Jefferson - July 04, 2019 - 02:27 PM

selling the materially-identical "Men + Care" antiperspirant for $6.29.

69.     On that same day, Plaintiff purchased the Product from Defendant CVS, paying $6.99.

70.     In or around June 2019, Plaintiff visited a retail outlet for Defendant Schnucks, located at 1253 Water Tower Rd., Arnold, MO 63010.

71.     While there, Plaintiff observed that Defendant Schnucks was selling the Product for $6.49.

72.     On information and belief, on the same day, at the same location, Defendant Schnucks was selling the materially-identical "Men + Care" antiperspirant for $5.49.

73.     On that same day, Plaintiff purchased the Product from Defendant Schnucks, paying $6.49.

74.     In or around June of 2019, Plaintiff visited a retail outlet for Defendant Dierbergs, located at 860 Arnold Commons, Dr., Arnold, MO 63010.

75.     While there, Plaintiff observed that Defendant Dierbergs was selling the Product for $6.49.

76.     On information and belief, on the same day, at the same location, Defendant Dierbergs was selling the materially-identical "Men + Care" antiperspirant for $5.49.

77.     On that same day, Plaintiff purchased the Product from Defendant Dierbergs, paying $6.49.

78.     On information and belief, all of the Retail Defendants price their goods consistently across all retail outlets in Missouri.

79.     When Plaintiff purchased the Product from each Retail Defendant, as set forth above, she was injured by each Defendants' unfair practice of employing a gender-discriminatory pricing scheme.

80.      Defendants' gender-discriminatory pricing schemes are arbitrary and unjustified and constitute an "unfair practice" in violation of the MMPA.

Electronically Filed - Jefferson - July 04, 2019 - 02:27 PM

81.     There is no legitimate or material difference in the labor, materials and/or related costs of production underlying Defendants' gender-discriminatory pricing schemes to justify the significant price disparity between the Product and the materially-identical "Men + Care" antiperspirant.

82.     The terms of the MMPA, particularly the term "unfair practice," must be liberally construed to protect consumers.[12]

83.     The 2019 version of the Merriam-Webster dictionary provides, as one definition of "unfair," something that is "not equitable in business dealings."  "Equitable" is defined as "dealing fairly and equally with all concerned." Obviously, Defendants' gender-discriminatory pricing schemes do not deal "equally" with purchasers of female-oriented products who are required to pay substantially more than purchasers of the male-oriented version of essentially the exact same product.

84.     Moreover, a Missouri regulation, 15 Mo. C.S.R. § 60–8.020, draws its authority from, and was promulgated to enforce, the MMPA; Section 60-8.020 provides that an "unfair practice" is any practice which, *inter alia,* "[o]ffends any public policy as it has been established by the Constitution, statutes or common law of [Missouri] … or … is unethical, oppressive or unscrupulous."

85.     Defendants' arbitrary and discriminatory pricing scheme is both "unethical" and "unscrupulous," and is "oppressive" to women; indeed, it is almost *universally* accepted that practices such as Defendants' are "unfair."[13]

---

[12] According to the Supreme Court of Missouri, "[t]he literal words [of the MMPA] cover every practice imaginable and every unfairness to whatever degree." *Ports Petroleum Co. Inc. of Ohio v. Nixon,* 37 S.W.3d 237, 240 (Mo. 2001).

[13] As just a few examples of the overwhelming consensus that such practices are unfair, supporters of the federal *Pink Tax Repeal Act* stated, *inter alia,* as follows: "It's time for these unfair practices to end." – Emily Martin, Vice President for Education & Workplace Justice at the National Women's Law Center; "There is no reason why men and women should pay different prices for essentially the same products or services; [t]his unfair practice should be stopped. The *Pink Tax Repeal Act* is a critical step in thwarting this unfair practice." – Susan Grant, Director of Consumer Protection and Privacy at Consumer Federation of America; "For products and services that do not differ in the labor, materials and related costs of production, it is unfair to charge more based on the gender of the consumer to whom it is marketed." – Richard Holober, Executive Director of the Consumer Federation of California.

Electronically Filed - Jefferson - July 04, 2019 - 02:27 PM

86.     In addition, Defendants' gender-discriminatory pricing schemes offend the same Missouri public policies underlying Missouri's express prohibitions against gender discrimination in multiple other areas, policies protecting the fact that all Missouri citizens are entitled to full and equal accommodations, advantages, facilities, privileges, and/or services regardless of factors like sex and/or race.

87.     For example, the Missouri Human Rights Act ("MHRA"), R.S. Mo. § 213.065(1) provides, generally, that "all persons within the jurisdiction of the state of Missouri are free and equal and shall be entitled to the full and equal use and enjoyment of any place of public accommodation [which includes retail stores] … without discrimination … on the grounds of, [*inter alia*] … sex."

88.     The MHRA further provides that "[i]t is an unlawful discriminatory practice for any person, directly or *indirectly,* to … withhold from or deny any other person … *any* of the … advantages … services … or privileges made available in any place of public accommodation … on the grounds of, [*inter alia*] … sex." R.S. Mo. § 213.065(1)(emphasis added).

89.     Accordingly, regardless of whether Defendants' gender-discriminatory pricing schemes violate the exact "letter" of the MHRA, the pricing schemes clearly offend some of the same public policies underlying the MHRA – particularly that consumers should be free from discrimination based on factors such as race and gender.

90.     In addition, 15 C.S.R. § 60–8.020 further provides that an "unfair practice" under the MMPA is any practice which, *inter alia,* "[o]ffends any public policy as it has been established by … the Federal Trade Commission, or its interpretive decisions…"

91.     The Federal Trade Commission ("FTC") has enforcement or administrative responsibilities under multiple laws, including the Federal Trade Commission Act and the Clayton Act.

---

*Available at*: https://speier.house.gov/media-center/press-releases/reps-speier-reed-reintroduce-pink-tax-repeal-act-end-gender-based.

Electronically Filed - Jefferson - July 04, 2019 - 02:27 PM

92.    The Clayton Act, as amended by the Robinson-Patman Act, 15 U.S.C. § 13, provides, *inter alia,* that it "shall be unlawful for any person engaged in commerce, in the course of such commerce, either directly or indirectly, to discriminate in price between different purchasers of commodities of like grade and quality …"

93.    Accordingly, regardless of whether Defendants' gender-discriminatory pricing schemes violate the exact "letter" of the Robinson-Patman Act, the pricing schemes clearly offend some of the same public policies underlying that Act – particularly that consumers should be free from pricing discrimination based on factors such as race and gender.

94.    Likewise, the Federal Trade Commission enforces the Equal Credit Opportunity Act, 15 U.S.C. § 1691 *et seq.* (the "ECOA").

95.    The ECOA, *inter alia,* makes it unlawful for a creditor to discriminate against any individual on the basis of age, race, color, religion, sex or marital status.

96.    Accordingly, regardless of whether Defendants' gender-discriminatory pricing schemes violate the exact "letter" of the ECOA, the pricing schemes clearly offend some of the same public policies underlying the ECOA – particularly that individuals should be free from discrimination based on factors such as race and gender.

97.    Thus, for several reasons, it is clear that Defendants' gender-discriminatory pricing schemes also "offend[] any public policy as it has been established … by the [FTC]." *See* 15 C.S.R. § 60–8.020.

98.    As such, for at least the multiple, independent reasons set forth *supra*, Defendants' gender-discriminatory pricing schemes constitute "unfair practice(s)" prohibited by the MMPA.

99.    In short, under Missouri law, Defendants' gender-discriminatory pricing is illegal.

100.    On information and belief, Defendant Unilever, which controls pricing of both the Product and the "Men + Care" line of antiperspirants, is jointly and severally responsible for the actions

Electronically Filed - Jefferson - July 04, 2019 - 02:27 PM

of each other Defendant listed herein.

## IV.    CAUSES OF ACTION AGAINST EACH DEFENDANT

**COUNT ONE: VIOLATION OF THE MMPA – "Unfair Practice" -- Discriminatory Pricing**

101.    Plaintiff hereby incorporates by reference and re-alleges each allegation set forth in each preceding paragraph of this Petition, as though fully set forth herein.

102.    The Defendants violated the Missouri Merchandising Practices Act, Mo. Rev. Stat. chap. 407 ("MMPA"), by employing gender-discriminatory pricing schemes in charging substantially more for a female-marketed version of a materially-identical product, the "Product" herein, than Defendants charge for the corresponding male-marketed version.

103.    For at least the multiple, independent reasons set forth *supra*, Defendants' gender-discriminatory pricing schemes constitute "unfair practice(s)" pursuant to the MMPA, and thus are illegal under Missouri law.

104.    As set forth above, Defendants engaged in such "unfair practices" in transactions with Plaintiff and the Class in Missouri which were intended to result in, and did result in, the sale of the Product, "merchandise" under the MMPA.

105.    Pursuant to Defendants' numerous violations of the MMPA, Plaintiffs were damaged, suffering ascertainable losses in the amount that each class member paid for the Product over and above the cost of "Men + Care," the essentially-identical product Defendants marketed and sold to male customers, and/or suffering ascertainable losses, pursuant to the strict terms of the MMPA, for the full amount of the Product Plaintiffs paid to each Defendant.

106.    Due to Defendants' illegal conduct, Plaintiffs are entitled to restitution of all funds improperly obtained by Defendants.

107.    In addition, Defendants' conduct as aforesaid was wanton, willful, outrageous, and in reckless indifference to the rights of Plaintiffs and others similarly situated and, therefore, warrants the

Electronically Filed - Jefferson - July 04, 2019 - 02:27 PM

imposition of punitive damages.

108.     Plaintiffs have been forced to hire attorneys to enforce their rights under the MMPA.

## COUNT TWO: INJUNCTIVE RELIEF

109.     Plaintiffs hereby incorporate and adopt by reference each and every allegation set forth above.

110.     Defendants continue to retain payment made by Plaintiffs and other members of the Class for the Product that is the result of Defendants' unfair practices in violation of the MMPA.

111.     Applicable law, including R.S. Mo. § 407.025, permits the Court to enter injunctive relief to prevent Defendants' continued violation of the law by continuing to charge substantially more for a female-marketed version of a materially-identical product than Defendants charge for the corresponding male-marketed version.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for an order certifying this action as a class action and appointing Plaintiff Karen Schulte as class representative and her counsel as class counsel. Plaintiff requests that this court find that the Defendants violated the MMPA, and award Plaintiffs compensatory damages, restitution, attorneys' fees, punitive damages, costs, and such further relief as the Court deems just.

Respectfully submitted,

**DANIEL F. HARVATH, ESQ.**

By: /s/ Daniel F. Harvath
Daniel F. Harvath, #57599MO
**HARVATH LAW GROUP, LLC**
75 W. Lockwood, Suite #1
Webster Groves, MO 63119
(314) 550-3717
dharvath@harvathlawgroup.com

Electronically Filed - Jefferson - July 04, 2019 - 02:27 PM

*Attorney for Plaintiff*