UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION
www.moed.uscourts.gov

| | |
|---|---|
| KAREN SCHULTE, *individually and on behalf of all others similarly situated,* | )<br>)<br>)<br>) |
| Plaintiffs, | )<br>) |
| vs. | )    Case No. 4:19 CV 2546 RWS |
| | ) |
| CONOPCO, INC, d/b/a Unilever,<br>WALGREEN CO.,<br>CVS PHARMACY, INC.,<br>WALMART, INC.,<br>TARGET CORPORATION,<br>SCHNUCK MARKETS, INC., and<br>DIERBERGS MARKETS, INC., | )<br>)<br>)<br>)<br>)<br>)<br>) |
| | ) |
| Defendants. | ) |

## **MEMORANDUM AND ORDER**

Plaintiff Karen Schulte filed this proposed class action lawsuit in state court. She alleges in her complaint that the defendants have violated the Missouri Merchandising Practices Act, § 407 RSMo (MMPA) by engaging in the discriminatory marketing of men and women's antiperspirants. Defendants filed a motion to dismiss asserting that Schulte fails to state a claim under the MMPA.[1] Because Schulte's complaint fails to state a claim for relief I will grant the Defendants' motion to dismiss.

---

[1] Defendant Walgreen Co. has not been served and did not join the motion to dismiss.

*Background*

Defendant Conopco, Inc., doing business as Unilever, manufactures personal care products including antiperspirants. Unilever makes a Dove brand product line of antiperspirants for women under the name "Advanced Care." Plaintiff Schulte alleges in her complaint that this product is sold in packaging which is more "feminine" and available in "feminine" scents (fifteen scents and varieties). This product is marketed to women in advertising and is found for sale in the "women's" section of stores.

Unilever also makes a Dove brand antiperspirant product line for men called "Men + Care." According to Schulte's complaint this product is marketed in more "masculine" packaging and comes in a variety of "masculine" scents. It is marketed to men and sold in the "men's" section of stores.

Schulte alleges that the women's and men's brands contain the same active ingredients. However, the men's brand does not contain a minor ingredient, hydroxyethyl urea, found in the women's brand and the men's brand contains multiple additional ingredients. In addition, the men's brand provides 2.7 ounces of product while the women's brand contains slightly less, 2.6 ounces of product.

Schulte alleges that she purchased six sticks of Advanced Care from six different sellers, the Retail Defendants, in June of 2019. On information and belief, Schulte alleges that the Retail Defendants were also selling Dove's Men +

Care at the time of her purchases. On information and belief, Schulte alleges that the price for the women's Advance Care product was higher than the men's Men + Care product at each of the Retail Defendants' stores ranging from 40 cents to $1.00 higher per stick of antiperspirant.

Schulte alleges that despite containing the same active ingredient, and the women's brand containing slightly less product, the women's Advanced Care was uniformly more expensive than the Men + Care. Schulte alleges that this is a gender-discriminating pricing scheme, a "pink tax," that is arbitrary and unjustified and constitutes an unfair practice in violation of the MMPA.

Schulte seeks to certify this case as a class action consisting of "All Missouri consumers, who, within the Class Period, purchased the 'Dove' – brand 'Advance Care' Antiperspirant (the 'Product') from any of the Retail Defendants in the State of Missouri." [Doc. # 5 at ¶20] The Class Period is defined as beginning five years prior to the filing of this lawsuit.

Defendant Unilever removed this case from state court pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d). Defendants then filed a joint motion to dismiss asserting that Schulte's complaint fails to state a claim under the MMPA. Schulte opposes the motion.

### *Legal Standard*

When ruling on a motion to dismiss, I must accept as true all factual

3

allegations in the complaint and view them in light most favorable to the Plaintiff. Fed. R. Civ. P. 12(b)(6); Erickson v. Pardus, 551 U.S. 89, 94 (2007). The purpose of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) is to test the legal sufficiency of the complaint. An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). To survive a motion to dismiss, a plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level. Id. at 555. A pleading that merely asserts conclusory statements and "naked assertions" that are not factually supported is insufficient to state a claim for relief. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

*Discussion*

In her complaint Schulte alleges that Defendants violated the MMPA by charging more for a line of Dove brand antiperspirants marketed to women than a similar line of antiperspirants marketed to men. Schulte claims that overcharging women for nearly identical antiperspirants is an "unfair practice" which violates the MMPA because it is gender-discriminatory pricing. [Id. at ¶s 4 and 22] She alleges that price difference is also deceptive under the MMPA because the average consumer "is largely unaware that nearly-identical products marketed to the opposite sex are substantially cheaper, especially when products are

4

differentiated in size and packaging style and often located in different parts of the store." [Doc. # 5, Compl. at ¶ 4] She asserts that although

> men and women are able to purchase a product marketed to the opposite sex, that alternative is even more unfair due to social conditioning and social expectations regarding what is "feminine" versus "masculine." Just as it would be unfair for men to have to purchase and use pink-colored razors the get a better price, it is unfair for women to have to, for instance, smell like a man to get a better price on their deodorant or aftershave.

[Id.]

*The Missouri Merchandising Practices Act*

The MMPA protects consumers from unfair practices "in connection with" the sale or marketing of a good or service. In relevant part, the MMPA prohibits:

> [t]he act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce ... in or from the State of Missouri.

§ 407.020.1 R.S.Mo. To state a prima facie MMPA claim, a plaintiff must allege that she 1) purchased merchandise; 2) primarily for personal, family or household purposes; and 3) suffered an ascertainable loss of money; 4) as a result of the use or employment by another person of a method or an act declared unlawful under the MMPA. § 407.025.1 R.S.Mo.

The MMPA grants the Missouri Attorney General authority to promulgate

5

all rules necessary to the administration and enforcement of its provisions. § 407.145 R.S.Mo   The MMPA's rules define a deceptive practice as "any method, act, use, practice, advertisement or solicitation that has the tendency or capacity to mislead, deceive or cheat, or that tends to create a false impression." 15 C.S.R. § 60–9.020(1).  An unfair practice is defined as any practice which offends any public policy as it has been established by the Constitution, statutes or common law of Missouri, or by the Federal Trade Commission or is unethical, oppressive or unscrupulous; and presents a risk of, or causes, substantial injury to consumers.  15 C.S.R. § 60–8.020(1).

In their motion to dismiss Defendants assert that the differential pricing of antiperspirants for men and women is neither unfair nor deceptive.  Defendants argue that Schulte's complaint fails to identify any public policy that supports her differential pricing claim.  They assert that Schulte's complaint "concerns issues of free market pricing and the role of consumer choice in the marketplace" that are not amenable to Schulte's suit.  [Doc. # 30 at 2]

Defendants point out that Schulte concedes the men and women's products at issue are not identical.  At a minimum they are packaged differently and come in different scents.  Schulte's complaint does not assert any factual allegations regarding the costs associated with the production, the research and development, and the marketing of these different product lines.  The complaint simply makes a

6

conclusory allegation that there "is no legitimate or material difference in the labor, materials and/or related costs of production underlying" to account for the price differential. [Doc. # 5 at ¶ 81]

Moreover, Defendants argue that Schulte was not deceived by her purchase. She received what she paid for and she does not allege otherwise. Schulte was free to purchase a less expensive antiperspirant and if she perceived the men's line of Dove antiperspirants was the same product as the women's line she could have purchased that product instead. In other words, Schulte does not allege that the label or the packaging on the products she purchased were deceptive. She had the option to purchase less expensive products.

Defendants also argue that Schulte's factual allegations fail to state a prima facie claim for an MMPA violation because she was clearly not purchasing the antiperspirant at issue primarily for personal use as required by the MMPA. She purchased six Dove antiperspirants sticks during June 2019 that form the basis for this lawsuit. During the same month she purchased ten additional antiperspirant sticks sold by two other brands for a total of sixteen antiperspirants. She then filed three class action lawsuits in state court on July 4, 2019 asserting "pink tax" violations under the MMPA.[2] These three cases were removed to this Court.

---

[2] The other two pink tax antiperspirant cases are Schulte v. Conoco, Inc. et al., 4:19 CV 2547 RWS and Schulte v. Colgate-Palmolive Co., et al., 4:19CV2552 HEA. In addition, Schulte's counsel filed fourteen other class action cases in state court in July 2019 for a total of seventeen class actions. Six were pink tax cases and eleven were false claim cases under the MMPA. All of these cases have been removed to this Court.

7

Defendants assert that these purchases were made for the purpose of filing lawsuits rather that for personal use and fail to establish an MMPA claim.

Missouri law does not compel identical products to be sold at the same price. A common example of this permissive pricing is the price differential between private brand and major brand products at the Retail Defendants' stores containing the exact same ingredients and quantity. See In re Aurora Dairy Corp. Organic Milk Mktg. & Sales Practices Litig., 621 F.3d 781, 789 (8th Cir. 2010) (discussing private brand milk sold at major retailers). In MMPA disputes over product pricing "the courts are not regulators of the fair market price of products." Thompson v. Allergan USA, Inc., 993 F. Supp. 2d 1007, 1012 (E.D. Mo. 2014) (rejecting claim that overfilling vials of prescription eye drops violated the MMPA).

In other jurisdictions too courts have rejected claims that products which contain the same active ingredients in the same amounts but are sold at different prices violate consumer protection laws. In Boris v. Wal-Mart Stores, Inc., 35 F. Supp. 3d 1163, 1168 (C.D. Calif. 2014), in ruling on a motion to dismiss the court held that Walmart did not violate California, New Jersey, and New York consumer laws by selling Equate Migraine medication for more than $9 and Equate Extra Strength medications for less than $3 when both products contained the same active ingredients at the same quantity of doses. The only major difference

8

between the two products was the former product was sold in a red package and the latter in a green package. The court found the parties received what they paid for and that "a consumer's assumptions about a product are not the benchmark for establishing liability under consumer protection statutes" relied on by the plaintiffs. Id. The court further stated that "price regulation is a quintessentially political question and thus nonjusticiable." Id. at 1172. A similar result was reached in Yingst v. Novartis AG, 63 F. Supp. 3d 412 (D. N.J. 2014) where the court rejected a consumer fraud act claim against the defendant for selling Excedrin Migraine and Excedrin Extra Strength at different prices even though both products contained the same active ingredient and the same quantity of medication.

In her response brief Schulte admits that no law in Missouri expressly prohibits Defendants from imposing an alleged "pink tax" on their products and she acknowledges that her claim is based on a "relatively novel legal theory." [Doc. # 32 at 2 and 3] Schulte states that she is not asking the courts to be the regulator of the fair market price of products. [Doc. # 35, Pl.'s Resp. at 2] She concedes that "sweeping, overreaching attempts to summarily prohibit gender-based (or any) pricing differentials are better left to legislators, not the judiciary." [Id.] Schulte argues that her lawsuit is far more limited and amenable to judicial resolution. She asserts that

> in certain specific and limited instances, the unique facts and

9

> circumstances attendant to in imposition of the 'Pink Tax' may be such that a *jury* (not a Court), analyzing and weighing those facts and circumstances, could find that such imposition of the Pink Tax, being wholly or inadequately justified, constitutes an 'unfair practice' under the Missouri Merchandising Practices Act.

[Id. at 2-3]

In her complaint and in her response brief Schulte asserts that a Missouri public policy against discriminatory pricing based on sex can be gleaned from the antidiscrimination policies contained in the Missouri Human Rights Act, § 213.065.1 R.S.Mo. (MHRA) and the Federal Trade Commission's (FTC) enforcement of the Clayton Act, as amended by the Robinson-Patman Act, 15 U.S.C. § 13 and the Equal Credit Opportunity Act, 15 U.S.C. § 1691, et seq. (ECOA)  [Doc. # 1 at ¶s 87 – 98 and Doc. # 35 at 7 – 9]  While it is true that these statutes address discrimination none of them bar sellers from charging different prices for products marketed to men and products marketed to women that arguably contain the same active ingredients.  The MHRA provision Schulte relies upon is the ban upon discrimination in the provision of services and privileges made available in any place of public accommodations based on, *inter alia*, sex. § 213.065.1 R.S.Mo.  Nothing in that statute addresses the pricing of products nor has any court interpreted that statute to do so.  Men and women are may purchase any brand of Dove antiperspirant which undermines any discriminatory accommodation claim.

The Robinson-Patman Act is even less arguably applicable to Schulte's claims. That statute was intended to prevent the seller of commodities from price discrimination in the sale of products to purchasers which affected competition in the marketplace. To establish a violation of the Act a plaintiff must show: 1) the seller discriminated in the price charged to plaintiffs and other buyers; 2) the price discrimination substantially affected competition in the marketplace; 3) the commodity sales occurred in interstate commerce; and 4) the commodity sold was of the like grade and quality. Godfrey v. Pulitzer Pub. Co., 276 F.3d 405, 408 (8th Cir. 2002) (a buyer's competition or secondary-line competition claim under 15 U.S.C. § 13(a)). Nothing in the Act applies to Schulte's claims in the present lawsuit. Men and women are may purchase any Dove product for the same price. Nor does the pricing difference between the products marketed to men and marketed to women affect competition in the marketplace.

Similarly, Schulte's reliance of the FTC's enforcement of the ECOA is misplaced. The ECOA makes it unlawful for a creditor to discriminate against any individual based on, among other characteristics, sex. The ECOA is not violated because Unilever is not acting as a creditor in the sale of its antiperspirants.

Schulte attempts to identify a broad public policy against any and all discrimination based on sex through the statutes cited above which prohibit specific areas of discrimination in support of her pink tax claim as an unfair

11

practice under the MMPA. She attempts to bolster her argument through the MMPA's rules which define an unfair practice as any practice which, *inter alia*, "offends any public policy as it has been established by … the Federal Trade Commission, or its interpretive decisions …" [Doc. # 5 at ¶ 90 citing 15 C.S.R. § 60–8.020(1)] The FTC has stated that to support a finding of unfairness a public policy "should be clear and well-established … it should be embodied in formal sources such a statute, judicial decisions, or the Constitution, as interpreted by the courts, rather than being ascertained from a general sense of national values." <u>FTC Policy Statement on Unfairness</u>, appended to <u>In the Matter of Int'l Harvester Co.</u>, 104 F.T.C. 949 (1984). The policy should be "widely shared, and not the isolated decision of a single state or a single court." (<u>Id.</u>) Moreover, the FTC has advocated for the free marketplace and requires that an actionable injury "must be one which consumers could not reasonably have avoided." (<u>Id.</u> at 97.)

> Normally we expect the marketplace to be self-correcting, and we rely on consumer choice—the ability of individual consumers to make their own private purchasing decisions without regulatory intervention—to govern the market. We anticipate that consumers will survey the available alternatives, choose those that are most desirable, and avoid those that are inadequate or unsatisfactory.

(<u>Id.</u>)

Schulte's discriminatory pricing claim does not meet the FTC's requirement that the practice be deemed unfair by a public policy that is well established by

12

"formal sources such a statute, judicial decisions, or the Constitution, as interpreted by the courts, rather than being ascertained from a general sense of national values." In support of her position Schulte relies on a study of gender pricing published in the New York City Department of Consumer Affairs publication and on articles published in support of the "Pink Tax Repeal Act" legislation that was proposed in the United States House of Representatives in 2016, 2018 and 2019 that has never been enacted. [Doc. # 5 at ¶ 2 n.1-3 and n.13; Doc. # 35 at 2 n.2, at 3 n.5, and at 7][3] In addition, Schulte alleges in her complaint that even though men and women are able to purchase products marketed to the opposite sex, that alternative is unfair due to social conditioning regarding what is feminine versus masculine. [Doc. # 5 at ¶ 4]

None of these studies, articles, proposed legislation, or social conditioning arguments meet the FTC's requirement that un unfair practice violates a public policy that is well established by statute, judicial decision, or Constitutional jurisprudence. Schulte's complaint fails to allege any facts that support a claim the sales of the Dove antiperspirants at issue were extrinsically discriminatorily deceptive or unfair. There is no claim that the ingredients of the antiperspirants were hidden or inaccurate or that the product did not contain what was represented

---

[3] She also makes the conclusory allegation that "governments" in New York, Miami-Dade County, Florida, and California as having "summarily outlawed the practice" of gender discrimination in pricing but fails to identify these statutes or ordinances. [Doc. # 5 at ¶ 2; Doc. # 35 at 2 n.2]

on the packaging. Women are able to purchase any of the Dove antiperspirants for the same price as men regardless of the scent or variety. Although Schulte has highlighted a pervasive issue of women being subjected to questionable pricing practices in the marketplace for similar of products and services marketed to men and women, her claims are not amenable to judicial resolution. Her remedy lies with legislation not litigation.

As a result, I will grant Defendants' motion to dismiss.

Accordingly,

**IT IS HEREBY ORDERED that** Defendants' motion to dismiss Plaintiff Karen Schulte's complaint [29] is **GRANTED**.

_____
RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE

Dated this 17th day of July, 2020.